UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUEL PERALTA, | Case No. 21-605 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT ("NYPD") OFFICER JONATHAN VASQUEZ (SHIELD NO. 11731), NYPD OFFICER ANDREW DISTELHURST (SHIELD NO. 18304), NYPD OFFICER MICHAEL GONZALEZ (SHIELD NO. 24102), NYPD SERGEANT DECLAN LUDINGTON (SHIELD NO. 6294), JOHN DOES 1-10, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff, by and through his undersigned attorney, alleges as follows:

## NATURE OF THE ACTION

1.   Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, as well as New York State law claims against all Defendants that are so related to the other counts that they form part of the same case

## JURISDICTION

2.   The Court has jurisdiction over Plaintiff's federal law claims under 28 U.S.C §§ 1331, 1343(a), (3), and (4), claims and supplemental jurisdiction over Plaintiff's State claims under 28 U.S.C. § 1367(a).

## JURY TRIAL DEMANDED

3.  Plaintiff demands trial by jury of all issues properly triable thereby.

## **VENUE**

4.  Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

## **THE PARTIES**

5.  Plaintiff Manuel Peralta is a United States citizen and resident of the City and State of New York.

6.  That at all times herein mentioned, Defendant CITY OF NEW YORK (hereinafter "CITY") was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

7.  That at all times herein mentioned, Defendant CITY operated, controlled and maintained a police force known as the New York Police Department ("hereinafter "NYPD").

8.  That at all times herein mentioned, defendant Officer Jonathan Vasquez (hereinafter, "VASQUEZ") was and is an NYPD officer employed by defendant CITY.

9.  That at all times herein mentioned, Defendant VASQUEZ was acting within the course and scope of his employment with defendant CITY.

10.  That at all times herein mentioned, Defendant VASQUEZ was acting under color of state law.

11.  Defendant VASQUEZ is sued herein in both his individual and official capacities.

12.     That at all times herein mentioned, Defendant Officer Andrew Distelhurst (hereinafter, "DISTELHURST") was and is an NYPD officer employed by defendant CITY.

13.     That at all times herein mentioned, Defendant DISTELHURST was acting within the course and scope of his employment with Defendant CITY.

14.     That at all times herein mentioned, Defendant DISTELHURST was acting under color of state law.

15.     Defendant DISTELHURST is sued herein in both his individual and official capacities.

16.     That at all times herein mentioned, Defendant Officer Michael Gonzalez (hereinafter, "GONZALEZ") was and is an NYPD officer employed by defendant CITY.

17.     That at all times herein mentioned, Defendant GONZALEZ was acting within the course and scope of his employment with Defendant CITY.

18.     That at all times herein mentioned, Defendant GONZALEZ was acting under color of state law.

19.     Defendant GONZALEZ is sued herein in both his individual and official capacities.

20.     That at all times herein mentioned, Defendant Sergeant Declan Ludington (hereinafter, "LUDINGTON") was and is an NYPD officer employed by defendant CITY.

21.     That at all times herein mentioned, Defendant LUDINGTON was acting within the course and scope of his employment with Defendant CITY.

22.     That at all times herein mentioned, Defendant LUDINGTON was acting under color of state law.

23.     Defendant LUDINGTON is sued herein in both his individual and official capacities.

24.     That at all times herein mentioned, currently unknown and unnamed body-worn camera policy making officials (hereinafter, "DOES") was and are NYPD officers employed by defendant CITY.

25.     That at all times herein mentioned, defendant DOES were acting within the course and scope of their employment with defendant CITY.

26.     That at all times herein mentioned, Defendant DOES were acting under color of state law.

27.     Defendant DOES are sued herein in both their individual and official capacities.

28.     At all relevant times herein, the individual Defendants acted jointly and in concert with each other.

29.     Each individual defendant had the duty and the opportunity to protect Plaintiff from the unlawful actions of the other individual Defendants, but each individual defendant failed and refused to perform such duty, thereby proximately causing Plaintiff's injuries.

## STATEMENT OF FACTS

30.     On or about May 1, 2019, Plaintiff Manuel Peralta had finished his late-night shift at his full-time local deli job.

31.     After work, at around 4:00 a.m., he was standing on the sidewalk near the front of his apartment in the Bronx speaking with his male neighbor.

32.     At the time of this incident, Plaintiff was not engaged in any illegal or unlawful activities. As he stood near his neighbor quietly talking, a third male initiated a verbal argument with said neighbor, in which Plaintiff played no part.

33.     At that time the two male neighbors started a verbal argument with one another.  Mr. Peralta was concerned because he could tell that things were heating up between those two men, and he did not want to be a part of the argument, or around either of the two neighbors.

34.     Plaintiff decided to go home immediately, as to avoid any confrontation with anyone on the street.

35.     He started to walk quickly in the direction of his home.  As he did so, he became aware that two additional and unknown individuals were running towards the group.

36.     Mr. Peralta, who was not engaged in any unlawful activity, started to run to avoid any impending confrontation.

37.     The two unknown individuals turned out to be Defendant Police Officers GONZALEZ and DISTELHURST, dressed in plain clothes, who never identified themselves as officers, or ever directed Mr. Peralta to stop.  They began chasing a frightened Mr. Peralta into his building.

38.     Plaintiff, perplexed as to why he was being chased, feeling very unsafe, and attempted to shut the door behind him.

39.     Defendants DISTELHURST and GONZALEZ, forced open the door, and Mr. Peralta fell to the ground in the corner behind the inwardly-opening door as the Defendant officers stood in building's entrance.

40.     Plaintiff, lying supine against the wall, raised his palms in surrender to Defendant Officers.  The Defendant Officers then grasped Mr. Peralta's hands and secured him with their bodyweight, turning him facing down, and on his stomach.

41.     Despite Plaintiff's surrendered posture and restraint (which is alarmingly known to cause positional asphyxia), and Plaintiff's complete submission to the officers, the other Defendant Officer maliciously kicked Plaintiff hard in the face, as Plaintiff was face down on the ground.

42.     As Defendant Officers together moved Plaintiff out of the corner behind the lobby door, Plaintiff offered no resistance and was fully restrained by the Officers, with his hands behind his back, and his body face down on the floor. Despite this, one Defendant Officer continued to assault Plaintiff, punching him in the head twice: once with his right hand closed in backhand, and once with his left openhand.

43.     At this time, one Defendant Officer then left the lobby of of Mr. Peralta's building. The other Defendant officer, who had used so much excessive force against Mr. Peralta, instead of helping him to his feet and leading him out of the building, opened the door and threw Plaintiff -who was still laying face down -out of the door, down the several stairs of the stoop,  and onto the street, where the left side of his head struck the pavement.

44.     During the course of this entire incident, Plaintiff was not informed for what reason he was under investigation, being arrested, or for what he was being

charged. Furthermore, because Defendant Officers did not identify themselves to Plaintiff or express any lawful order, directive or command relevant to their status as police officers, and because Plaintiff had not engaged in any unlawful activity, he did not know why he was being chased, handcuffed, or beaten.

45.     On May 1, 2019, at approximately 4:45AM, Defendant Officers, without probable cause or legal justification, assaulted, arrested and imprisoned Plaintiff Manuel Peralta.

46.     According to Defendants in the arrest report, Plaintiff had committed the crime of Obstructing Governmental Administration, Resisting Arrest, and Disorderly Conduct.

47.      In fact, there was no evidence, and no reasonable basis to believe, that Plaintiff had at any time engaged in these crimes.

48.     Defendant Officers transported Plaintiff to the 47th Precinct, where he requested medical attention for his injuries due to the excessive force used against him by Defendant Officers.

49.     Plaintiff remained at the 47th Precinct until approximately 10:45AM, when he was transported to Bronx Central Booking's first floor intake. Only at approximately 12:00 PM, approximately seven hours after his arrest, was Plaintiff finally transported in leg restraints to the Lincoln Hospital emergency room, where he remained until approximately 2:00 AM on May 2nd, 2019, handcuffed to a chair throughout.

50.     After being transported back to Central Booking, he awaited arraignment.

51.     As Plaintiff did not commit either of the offenses with which he was charged, he pleaded not guilty to all counts, and was released on his own recognizance (commonly referred to as "ROR'ed") at approximately 5:00PM on May 2nd, 2019.

52.     Plaintiff spent approximately thirty-six hours in Defendants' custody following his unlawful arrest.

53.     Defendant Officers arrested Plaintiff not for any legitimate law enforcement purpose, but to cover up for their use of excessive force against Plaintiff.

54.     Defendants knowingly relayed false allegations against plaintiff that they had devised to the Bronx County District Attorney's Office, including that on or about May 1, 2019, Plaintiff "flailed his arms and twisted his body in an attempt to avoid being handcuffed" and "interfered with [Defendant Officers' performing their] official police duties."

55.     The Bronx County District Attorney's Office used the information provided by Defendants to draft a criminal court complaint against plaintiff.

56.     Defendants VASQUEZ and DISTELHURST signed the criminal court complaint, thereby swearing to the veracity of its allegations, under penalty of perjury, despite knowing that there was no truth to those allegations whatsoever, that the allegations against Plaintiff were false and completely fabricated, that there was never any legal basis to have detained or arrested Plaintiff, and that there was no legal basis to prosecute him.

57.     While Defendant Officer DISTELHURST and Defendant Officer GONZALEZ were both wearing a body-worn camera, and according to the Bronx

District Attorney Body Worn Camera Checklist, both of their cameras were activated during the incident, the NYPD's response to our FOIL request contained absolutely no footage of any use of force.   Curiously absent was any video footage of the actual apprehension of Plaintiff.

58.     However, upon FOIL of the Bronx DA office, there was one video that was provided by the Bronx DA FOIL office on, which was edited in length and brevity that showed the chase into the building, but that cut off before the Defendant's misconduct- namely the use of force.  It did not contain the apprehension of Plaintiff, only the chasing of Plaintiff into his building, and the opening of the door.

59.     It is strange that of the two Defendant Officers chasing Mr. Peralta, there was no FOIL video of the chase from the NYPD FOIL unit, and only a single brief (less than one minute) video from the Bronx DA that cut off as soon as the officers forced themselves into the door, but no video after the use of force.

60.     While the incident occurred around 4:11 am, there was no body worn camera footage provided in the FOIL requests between 4:11 and 4:22, when the force was used against Mr. Peralta by Defendant Officers.

61.     It is clear that the video of the running body worn camera was destroyed, or cut off, damaged, and purposely, in spoliation of the evidence in order to prevent access to the courts.

62.     There was a Threat, Resistance or Injury ("TRI") worksheet for both Defendants GONZALEZ and Defendant DISTERLHURST that was signed off by supervising Sergeant Declan LUDINGTON.

63.     The TRI for both GONZALEZ and DISTELHURST indicated that they

had on body cameras, and that the force was used in defense of self, defense of other

member of service, fleeing suspect, and to overcome resistance or aggression.

64.     However, again, no body worn camera was produced by NYPD FOIL,

and only a less than minute body worn camera footage was provided by the Bronx

DA's office, that showed no use of force, but the video was cut off abruptly after the

Defendant officers entered the lobby, but before they kicked and punched Mr. Peralta.

65.     However, despite there being body worn camera footage of the incident,

Supervising Sergeant LUDINGTON did not recommend further investigation by the

IAB, duty captain, or First Deputy's Force Investigation Division.

66.     Despite there being proof of the use of excessive force, not in

compliance, but in contradiction to the Department Procedures, Defendant Officers

DISTLERHURST and GONZALEZ were not investigated or disciplined.

67.      Plaintiff Manuel Peralta was thereafter arraigned on a criminal court

complaint under Bronx County Docket Number 2019BX012236, which, based on the

fabricated information that Defendants had provided to the District Attorney's Office,

charged plaintiff with Resisting Arrest (P.L. 205.30) and Obstructing Governmental

Administration (P.L. 195.05).

68.     There was no probable cause that Plaintiff had committed either of these

crimes or any other offense.

69.     The prosecution of Plaintiff Peralta continued until November 13, 2019,

when, after more than six months, the case was dismissed on Motion for the

accusatory instrument being facially deficient by Mr. Peralta's criminal defense attorney, Paul Vernon.

70.     No video of the use of force had been produced in any of the criminal court proceedings, or before Judge Licitra who presided over the case.

71.     In her decision dismissing all criminal charges against Mr. Peralta, Hon. Wanda L. Licitra- based solely on the charging instrument/criminal complaint- found that Mr. Peralta had not committed the crimes of OGA, or Resisting Arrest, and dismissed the charges against Plaintiff.

72.     All Defendants agreed, cooperated, participated, and conspired with their co-Defendants herein to assist in and effectuate Plaintiff's unlawful arrest, excessive force, malicious abuse of process, and malicious prosecution for crimes Officers knew that he did not commit, and in so doing deprived Plaintiff of his rights, privileges and immunities secured by the Constitution of the United States, the New York State laws, and including, but not limited to, his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law.

73.     Defendants made these false allegations against Plaintiff with actual malice, and out of spite and ill will, and with retributive purpose.

74.     Defendants engaged in the above-described conduct intentionally and/or with deliberate indifference to Plaintiff's constitutional and civil rights.

75.     Plaintiff Peralta was required, at least three times, to appear in court to defend against the false criminal charges that had been lodged against him.

76.     All Defendants acted in concert to lodge these false allegations against Plaintiff Peralta and initiate a prosecution against him for offenses they knew he did not commit.

77.     Upon information and belief, Defendants arrested and imprisoned Plaintiff despite knowing that there was no legal justification for doing so in order to justify their own actions, and cover up their use of force against Plaintiff, and to put pressure on plaintiff to plead guilty.

78.     Upon information and belief, Defendant City of New York, has both a custom of editing and withholding body-worn camera video, and the supervisors not enforcing any discipline for such actions, and JOHN DOE as the policy maker, in charge of body camera policy and enforcement, was made aware of these edits and with-holdings, both through newspaper articles, the CCRB report, and other lawsuits, and has failed to address this pattern

79.     The City of New York, through the NYPD, was aware of the redaction and withholding of body worn camera footage but were deliberately indifferent to it and failed to train, supervise, or discipline officers who were not submitting their body-worn camera footage, or redacting where there was no legal or procedural justification for the redaction.

80.     One of the purposes of a body worn camera is to deter officers from engaging in unconstitutional conduct.  The rationale being that body worn cameras increase transparency, and ergo, accountability.  There is no transparency where the footage is with-held or redacted to spoil any evidence of misconduct.

81.     Defendant Officers, who were both, according their own TRI's, wearing body-worn cameras, did not submit the footage of their misconduct.

82.     The footage of their misconduct was not provided to the Bronx District Attorney's office, as per the written patrol guidelines (see, 212-123 2018 version section 31, and 2020 version line 21).

83.     The City of New York is deliberately indifferent to the absence of discipline or oversight.

84.     Defendant officers knew they would not have submit the unedited body-worn footage cameras in full, because they were aware of the City of New York's failure to train, supervise, or discipline officers for such acts.

85.     The practice of editing or not releasing body worn camera footage in order to hide illegal acts by the NYPD Officers, and the lack of supervision over such actions, has been routine, and found in all levels of the NYPD. Such actions, by the wanton hiding and editing, fabricating evidence to twist the narrative, is a direct consequence of the lack of supervision and training of NYPD Officers to submit and release unredacted BWC footage.  It is because of such policy and custom, which is objectively deliberately indifferent, that the NYPD Defendant Officers committed the unlawful actions they did here.  Such lack of supervision and training, among other things, is an implicit agreement to the fact it is being done.

86.     Defendant Officers knew that their supervisors coalesced in the hiding of segments of video, the very accountability measures put in place to prevent illegal conduct by state actors.

87.     This withholding of video is one NYPD policy makers and supervisors

had been aware, as it has been on going issue since the introduction of the BWC's.

These issues have been reported many times, by different news outlets, (See,

https://gothamist.com/news/nypd-body-cameras-dont-stop-officers-from-making-

unlawful-stops-study-shows, https://www.gothamgazette.com/city/9723-new-body-

camera-policy-nypd-controls-video-narrative)

88.     It has oft been reported that the NYPD is not giving critical bodycam

footage to officials investigating abuse (See, https://www.propublica.org/article/the-

nypd-isnt-giving-critical-bodycam-footage-to-officials-investigating-alleged-abuse)

"the department's refusal to share evidence of its own officers' potential misconduct

isn't an aberration. It's routine. Despite its legal obligations, the NYPD has been

withholding significant evidence and undermining investigations of alleged abuse….

And, critically, it often doesn't produce body-worn camera footage."

89.      As a result of the foregoing, Plaintiff sustained, *inter alia*, deprivation of

his constitutional rights; loss of enjoyment of life; loss of liberty; loss of basic;

fundamental human contact; loss of natural contact with his significant other; loss of

natural contact with his family; loss of the natural family role he played within his

family as father and husband; physical injuries; personal injuries; emotional injuries;

loss of income; loss of economic opportunity; pain and suffering; severe mental

anguish, emotional distress, fear and lack of privacy, inadequate medical care;

humiliation, indignities and embarrassment; degradation; injury to reputation;

restrictions on or total deprivations of all personal freedoms; liberties and

entitlements, including but not limited to diet, sleep, personal contact, educational

opportunity, vocational opportunity, athletic opportunity, hobbies, religious

fulfillment, personal fulfillment, sexual activity, family relations, marital relations,

reading, movies, travel, driving, enjoyment, and expression. Furthermore, as a direct

result of his unjust conviction and imprisonment, and the excessive force used against

him, many of the effects of these disabilities and impairments continue to plague

Plaintiff to this day, and will continue to plague Plaintiff for the rest of his life.

<u>FIRST CLAIM FOR RELIEF</u>
**EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983 AND
THE FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION**

90.     The Plaintiff incorporates by reference the allegations set forth in all

previous Paragraphs as if fully set forth herein.

91.     The level of force employed by Defendants against Plaintiff was

objectively unreasonable and violated Plaintiff's constitutional rights.

92.     As a result of the aforementioned conduct of the Defendants, Plaintiff

was subjected to excessive force and sustained physical and emotional injuries.

<u>SECOND CLAIM FOR RELIEF</u>
**FALSE ARREST IN VIOLATION OF 42 U.S.C. § 1983 AND
THE FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION**

93.     The Plaintiff incorporates by reference the allegations set forth in all

previous Paragraphs as if fully set forth herein.

94.     Plaintiff was subjected to an illegal, improper and false arrest by

Defendants, and taken into custody and caused to be falsely imprisoned, detained, and

confined, without any probable cause, privilege or consent.

95.     As a direct and proximate result of the foregoing, Plaintiff was placed in

substantial and prolonged fear for his safety, his liberty was restricted for an extended

period of time, he was subjected to handcuffs and other physical restraints, without

probable cause or other lawful justification, in violation of the Fourth and Fourteenth

Amendments of the Constitution of the United States and suffered and will continue

to suffer injury and damages as a result, including, inter alia, physical and mental pain

and suffering, and mental anguish.

**THIRD CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION IN VIOLATION OF 42 U.S.C. § 1983 AND THE**
**FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION**

96.     The Plaintiff incorporates by reference the allegations set forth in all

previous Paragraphs as if fully set forth herein.

97.     Defendants misrepresented and falsified evidence before the District

Attorney for charges against Plaintiff, Resisting Arrest (P.L. 205.30), Obstructing

Governmental Administration (P.L. 195.05).

98.     Defendants did not make a complete and full statement of facts to the

District Attorney, and withheld exculpatory evidence from the District Attorney for

charges against Plaintiff.

99.     Defendants were directly and actively involved in the continuation of

criminal proceedings against Plaintiff for charges against Plaintiff.

100.     Defendants acted with malice in continuing criminal proceedings

against Plaintiff.

101.     Defendants misrepresented and falsified evidence throughout all phases

of the criminal proceeding.

102.     Notwithstanding the perjurious and fraudulent conduct of the

Defendants, the criminal proceedings against plaintiff were terminated in Plaintiff's

favor on November 13, 2019 when all charges against his were dismissed by Order of the criminal court Judge.

### FOURTH CLAIM FOR RELIEF
### MALICIOUS ABUSE OF PROCESS IN VIOLATION OF 42 U.S.C. § 1983

103. The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

104. Defendants issued legal process to place Plaintiff under arrest.

105. Defendants arrested Plaintiff in order to achieve a collateral objective of covering up their force, beyond the legitimate ends of the legal process.

106. Defendants acted with intent to do harm to Plaintiff without excuse or justification.

107. As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff have suffered and will continue to suffer injury and damages, including, inter alia, physical and mental pain and suffering, and mental anguish.

### FIFTH CLAIM FOR RELIEF
### FAILURE TO INTERVENE IN VIOLATION OF 42 U.S.C.§ 1983

108. The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

109. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights.

110. The individual Defendants failed to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights incurred by the use of excessive force

against him, his false arrest, malicious prosecution, and excessive force, despite

having had a realistic opportunity to do so.

111.     As a result of the aforementioned conduct of the individual Defendants,

Plaintiff's constitutional rights were violated.

## SIXTH CLAIM FOR RELIEF
## DUE PROCESS OF LAW AND COVER-UP CLAIM IN VIOLATION OF 42 U.S.C.§ 1983

112.     The Plaintiff incorporates by reference the allegations set forth in all

previous Paragraphs as if fully set forth herein.

113.     In all of the reports of the incident, and all the subsequent hearings

regarding the underlying inmate incident and in all of the papers produced, the

photographs, they were all filled with the fabrications, cover up and lies perpetrated

by Defendants.

114.     There was ample evidence that showed that Mr. Peralta had been attacked

by Defendants.

115.     Evidence was fabricated and made up by Defendants, including the

destruction of the evidence of the body camera footage, to

create/fabricate/manufacture the cover up of the crime.

116.     This cover up was performed by Defendants in order to cover up for the

use of excessive force against Mr. Peralta, and has now made it almost impossible for

Plaintiff to litigate this underlying claim, because material evidence was destroyed

that showed Officers using force against Mr. Peralta, making it more difficult for Mr.

Peralta to access to the Courts.

117.    In the arrest report and the TRI were filled out by Defendants with the same lies created by Defendants regarding the injuries to Plaintiff and they all tainted Plaintiff's prosecution and lack of discipline imposed on Defendants.

118.    The tainting and manufacturing and hiding of evidence in such due process proceedings is abhorrent in our society, and shocks the conscience.

119.    A basic tenet of due process is the ability to confront notoriously unreliable evidence.

120.    Defendants knew their statements and actions were unlawful, contradictory and unbelievable.

121.    Such conduct is deliberately indifferent and amounts to a violation of due process of law as guaranteed by the Fourteenth Amendment.

122.    The Defendants' many failures caused the injuries to Plaintiff.

123.    As a direct and proximate cause of the Defendants' actions, Plaintiff suffered emotional and physical torture, injury, and trauma, immense pain and suffering, humiliation, and terror.

## SEVENTH CLAIM FOR RELIEF
## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. 1983

124.    The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

125.    By their conduct in failing to remedy the wrongs committed by employees of the THE CITY OF NEW YORK under their supervision; in failing to properly train, supervise, or discipline employees of the THE CITY OF NEW YORK under their supervision; and in directing employees under their supervision,

Defendants, acting under the color of state law and in their individual and official capacities and within the scope of their employment, caused damage and injury in violation of Plaintiff' rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its Fourth and Fourteenth Amendments.

126.     As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM FOR RELIEF
### ASSAULT AND BATTERY UNDER THE NEW YORK CONSTITUTION

127.     The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

128.     By the actions described above, defendants did inflict assault and battery upon the Plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

129.     As a result of the foregoing, Plaintiff was deprived of his liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM FOR RELIEF
### FALSE ARREST AND FALSE IMPRISONMENT
### UNDER THE NEW YORK CONSTITUTION

130.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

131.     By the actions described above, defendants caused plaintiff to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

132.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

**TENTH CLAIM FOR RELIEF**
**TRESSPASS UNDER THE NEW YORK CONSTITUTION**

133.     The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

134.     The Defendants willfully, wrongfully and unlawfully trespassed upon the person of plaintiff.

135.     As a result of the foregoing, Plaintiff was deprived of his liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

**ELEVENTH CLAIM FOR RELIEF**
**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL**
**DISTRESS UNDER THE NEW YORK CONSTITUTION**

136.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

137.     By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which

intentionally and/or negligently caused severe emotional distress to Plaintiff.  The acts
and conduct of the defendants were the direct and proximate cause of injury and
damage to the plaintiff and violated his statutory and common law rights as
guaranteed by the laws and Constitution of the State of New York.

138.    As a result of the foregoing, plaintiff was deprived of her liberty and
property, experienced pain and suffering, garden variety emotional injury, costs and
expenses, and was otherwise damaged and injured.

**TWELTH CLAIM FOR RELIEF**
**NEGLIGENCE UNDER THE NEW YORK CONSTITUTION**

139.    The plaintiff incorporates by reference the allegations set forth in all
previous Paragraphs as if fully set forth herein.

140.    The defendants, jointly and severally, negligently caused injuries,
emotional distress and damage to the Plaintiff.  The acts and conduct of the
defendants were the direct and proximate cause of injury and damage to the Plaintiff
and violated his statutory and common law rights as guaranteed by the laws and
Constitution of the State of New York.

141.    As a result of the foregoing, Plaintiff was deprived of his liberty and
property, experienced pain and suffering, garden variety emotional injury, costs and
expenses, and was otherwise damaged and injured.

**THIRTEENTH CLAIM FOR RELIEF**
**NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND**
**TRAINING UNDER THE NEW YORK CONSTITUTION**

142.    The Plaintiff incorporates by reference the allegations set forth in all
previous Paragraphs as if fully set forth herein.

143.     Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

144.     As a result of the foregoing, Plaintiff was deprived of his liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM FOR RELIEF
### CONSTITUTIONAL TORT

145.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

146.     Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11 and 12 of the New York State Constitution.

147.     A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 9, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

148.     As a result of the foregoing, Plaintiff was deprived of his liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM FOR RELIEF
### ABUSE OF PROCESS UNDER THE NEW YORK CONSTITUTION

149.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

150.    By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

151.    As a result of the foregoing, Plaintiff was deprived of his liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTEENTH CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER THE NEW YORK CONSTITUTION

152.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

153.    By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

154.     As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, garden variety emotional injury, costs and expenses, and was otherwise damaged and injured.

### SEVENTEENTH CLAIM AGAINST ALL DEFENDANTS
### CONSPIRACY IN VIOLATION OF BOTH § 1985(2) AND §1985(3)

155.     Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein.

156.     Defendants agreed, cooperated, participated, and conspired to assist in and effectuate Plaintiff's unlawful force, detention, arrest, imprisonment, and malicious prosecution for crimes he did not commit, and in so doing deprived plaintiff of his rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

157.     Defendant Officers conspired with each other for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice.  Here, Defendants hid evidence, a criminal activity.

158.     None of these acts were in any way related to corporate policy or management decision, but were instead to further the criminal acts of Defendants.

159.     Defendants cooperated together and hid their actions, and were not only creating and assisting in such a situation, but were deliberately indifferent to the rights of the Plaintiff to a degree that shocks the conscience.

160.      Defendants' obstruction of justice, knowledge of obstruction, in addition to their deliberate indifference, caused Plaintiff's injuries.

## EIGHTEENTH CLAIM FOR RELIEF
### *MONELL* CLAIM AGAINST CITY DEFENDANT UNDER 42 U.S.C. 1983

161.    The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

162.    The individual defendants, singly and collectively, while acting within the scope of their employment and authority and under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules, or usages of the NYPD and their specific precinct(s) forbidden by the Constitution of the United States.

163.    The foregoing customs, policies, practices, procedures, rules, and usages include, but are not limited to, editing and with-holding Body Worn Camera footage for the sole purpose of hiding and destroying evidence of NYPD officers unconstitutional conduct.  This also includes, without limitation:

 a. Routinely editing BWC video directly, before producing such to agencies such as the CCRB, or the District Attorney's Office, so that the video evidence of their excessive use of force is not preserved;

 b. Routinely with-holding video to different agencies, including the CCRB, or the District Attorney's Office, that shows officers arresting an individual unlawfully and without probable cause;

 c. Routinely altering BWC video footage in order to edit the narrative into one that is favorable to the NYPD;

 d. Ignoring evidence calling into question or directly or indirectly repudiating above mentioned measures;

e.  Failing to perform basic supervision and oversight of videos, to catch and discipline officers who engage in such conduct;

f.  Encouraging and directing, through policy and/or practice, its law enforcement officers to destroy, edit, and withhold video evidence that would reveal unconstitutional conduct;

g.  Encouraging and directing, through policy and/or practice, its law enforcement officers to hide and to edit BWC video that could be used to show officers unconstitutional conduct.

164.    Defendant CITY has recklessly and with deliberate indifference failed to provide adequate training and standards and policies and practices for its police officers. Such thus leads to recklessly and deliberately indifferent oversight which consciously permits the destruction of evidence, and leading to the arrest, and prosecution of individuals who are innocent of any wrongdoing in a related crime or crimes of which the individual is accused, arrested, and prosecuted.

165.    The abuse to which plaintiff was subjected was consistent with an institutionalized practice of the NYPD, which was known to and ratified by defendant CITY.

166.    Despite knowledge of these institutionalized practices, defendant CITY has at no time taken any effective action to prevent NYPD personnel from continuing to engage in this type of misconduct.

167.    Defendant CITY had prior notice of the vicious propensities of defendants, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

168.   The failure of defendant CITY to properly train defendants included the failure to instruct them in applicable provisions of the State Penal Law of the State of New York, federal and state constitutional limitations, and the proper and prudent use of force and arrests.

169.   Defendant CITY authorized, tolerated as institutionalized practices, and ratified the misconduct detailed above by, among other things:

a.   Failing to properly discipline, train, restrict, and control employees, including defendants, known to be irresponsible in their dealings with citizens of the community;

b.   Failing to take adequate precautions in the training, hiring, promotion, and retention of police personnel, including specifically defendants herein;

c.   Failing to forward to the offices of the District Attorneys evidence of criminal acts committed by police personnel;

d.   Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public.

e.   That the failure to supervise and/or train by defendant CITY of defendants herein rose to the level of deliberate indifference to the consequences of its actions, and indifference to plaintiff's rights, privileges and immunities secured by the Constitution of the United States of America, inter alia, plaintiff's Fourth and Fourteenth Amendment rights.

170.     The NYPD has inadequately screened, hired, retained, trained, and supervised its employees, including the individual defendants herein, to respect the constitutional rights of those individuals with whom NYPD police officers come in contact.

171.     The foregoing customs, policies, practices, procedures, rules, and usages constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

172.     The foregoing customs, policies, practices, procedures, rules, or usages were the direct and proximate cause of the constitutional violations suffered by plaintiff.

173.     The foregoing customs, policies, practices, procedures, rules, or usages were the moving force behind the constitutional violations suffered by plaintiff.

174.     injured.

## NINETEENTH CLAIM FOR RELIEF
## N.Y. STATE CONST. ART. I § 12 EXCESSIVE FORCE & DUE PROCESS

175.     The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

176.     By using excessive force against Plaintiff without provocation and with no penological purpose, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, Defendants deprived Plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by Article I § 12 of the New York State Constitution.

177.     Defendants acted under color of law and conspired to deprive Plaintiff of his civil, constitutional, and statutory right to due process of law pursuant to §§ 5 and 6 of

the New York State Constitution by fabricating false statements against him for the purpose of covering up their unconstitutional conduct, and are liable to Plaintiff under the New York State Constitution.

178.   Defendants, their officers, agents, servants and employees, were responsible for Plaintiff's injuries. Defendant City, as employer of the officer defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

179.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.  The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief jointly and severally against all the Defendants:

a.   Compensatory damages in an amount to be determined at trial;

b.   Punitive damages in an amount to be determined at trial;

c.   Attorney's fees pursuant to 42 U.S.C. § 1988;

d.   An award of Plaintiff's costs of suit;

e.   Pre-judgment and post-judgment interest;

f.   Such other relief as this Court deems just and proper.

Dated this 22nd day of January, 2021

Respectfully Submitted,

_____/s/_____
P. Jenny Marashi (PM0916)

Marashi Legal
930 Grand Concourse, #1E
Bronx, NY 10451
(917) 703-1742
Marashi.legal@gmail.com
Attorney for Plaintiff